# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **DERIC HUNT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.:  4:15-CV-2267-VEH |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant**. | ) |

## MEMORANDUM OPINION

Plaintiff Deric Hunt ("Mr. Hunt") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Supplemental Security Income ("SSI").[1] Mr. Hunt timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[2]

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB"). However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Hunt was 37 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (Tr. 21, 105). He has completed the twelfth grade. (Tr. 21, 38). His past work experience includes employment as a material handler, construction worker, heavy equipment operator, dishwasher, poultry hanger, and poultry operator. (Tr. 21, 153-59). He claims he became disabled on October 10, 2012, due to asthma and back pain. (Tr. 12, 15, 105). His last period of work ended on October 10, 2012. (Tr. 14).

On October 10, 2012, Mr. Hunt protectively filed a Title XVI application for SSI. (Tr. 12, 105-10). On December 3, 2012, the Commissioner initially denied these claims. (Tr. 12). Mr. Hunt timely filed a written request for a hearing on December 26, 2012. (Tr. 6-8, 12). The ALJ conducted a hearing on the matter on March 28, 2014. (Tr. 12, 29-52). On May 29, 2014, he issued his opinion concluding Mr. Hunt was not disabled and denying him benefits. (Tr. 12-22). Mr. Hunt timely petitioned the Appeals Council to review the decision on June 5, 2014. (Tr. 7). On October 15, 2015, the Appeals Council issued a denial of review on his claim. (Tr. 1-5).

Mr. Hunt filed a Complaint with this court on December 15, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on March 22, 2016. (Doc. 7). Mr. Hunt filed a supporting brief (Doc. 11) on June 23,

2016, and the Commissioner responded with her own (Doc. 12) on June 27, 2016. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has

3

been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of September 29, 2016.

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1. Mr. Hunt had not engaged in substantial gainful activity since

       October 10, 2012, the alleged disability onset date. (Tr. 14).

2.     He had the following severe impairments: degenerative disc disease, broad-disc bulge at L5-S1 with moderate facet arthropathy causing bilateral foraminal stenosis (mild); history of gout; history of asthma (controlled); tendinopathy; Chronic Obstructive Pulmonary Disease (COPD), mild; and painful bilateral shoulders. *Id.*

3.     Mr. Hunt did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

4.     He had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b) except he would be required to have an at will sit/stand option with the ability to remain on work station in at least 30 minute increments without significant reduction of remaining on task. He can ambulate short distances of up to 50 yards per instance on flat hard surfaces. He can occasionally reach overhead and frequently reach in all other directions. He can occasionally climb ramps and stairs but can never climb ladders or scaffolds. He can frequently balance but can only occasionally stoop, kneel, and crouch but never crawl. The claimant could occasionally be exposed to unprotected heights and frequently exposed to moving mechanical parts and machinery. He should never operate commercial motor vehicles. He can tolerate occasional exposure to humidity, wetness, extreme heat and vibration. Claimant can tolerate frequent exposure to weather, atmospheric conditions and extreme cold. He should have no exposure to dust, fumes, gases or other pulmonary irritants. He would be limited to routine and repetitive tasks and simple, routine work-related decisions. In addition to normal workday breaks, he would be off-task 5% of an 8-hour workday (non-consecutive minutes). (Tr. 15).

5.     Mr. Hunt was unable to perform any past relevant work. (Tr. 21).

6. He was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability date. (Tr. 21).

7. Mr. Hunt had at least a high school education and was able to communicate in English. *Id.*

8. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that he was "not disabled," whether or not he had transferable job skills. *Id.*

9. Considering his age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform. *Id.*

10. Mr. Hunt had not been under a disability, as defined in the Social Security Act, from October 10, 2012, through the date of this decision. (Tr. 22).

## **ANALYSIS**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains from reweighing the evidence or

---

[4] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

substituting its own judgment for that of the [Commissioner]." *Walden*, 672 F.2d at 838 (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)).

Mr. Hunt urges this court to reverse the Commissioner's decision to deny his benefits on May 29, 2014, on the following grounds: the Commissioner's decision is not supported by substantial evidence, and it conflicts with the Regulations. (Doc. 11 at 12). More specifically, Mr. Hunt maintains that "[t]he ALJ's decision is not supported by substantial evidence due to his failure to give Dr. Janie Teschner's ("Dr. Teschner") opinion substantial weight and to properly apply the pain standard in this case." (*Id.* at 14). Because the court finds no reversible error with respect to either issue, the Commissioner's decision will be affirmed. The court first addresses the ALJ's application of the pain standard.

### I. THE ALJ'S DISABILITY DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

#### A. The ALJ gave adequate reasons for discounting Mr. Hunt's subjective complaints about pain and other disabling symptoms.

A claimant's subjective complaints alone are not conclusive evidence of a disability. 42 U.S.C. § 423(d)(5)(A). The Regulations instead require that the claimant's subjective complaints must be supported by the medical evidence of record, which must show that the claimant suffers from a medical condition that is

reasonably expected to produce the alleged level of pain. *Id.*; *cf. Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) ("Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is *itself* sufficient to sustain a finding of disability." (emphasis in original) (citing *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987))).

In the Eleventh Circuit, a claimant attempting to establish disability through pain and other subjective disabling symptoms must satisfy the following framework: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Heppell-Libsansky v. Commissioner of Social Security*, 170 F. App'x 693, 698-99 (11th Cir. 2006) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Holt*, 921 F.2d at 1223 ("The standard also applies to complaints of subjective conditions other than pain." (citing *Jackson v. Bowen*, 873 F.2d 1111, 1114 (8th Cir. 1989))).

Additionally, the ALJ must give specific and adequate reasons for discrediting a claimant's subjective pain testimony, *Holt*, 921 F.2d at 1223 (citing *Hale*, 831 F.2d at 1011), and the failure to do so means "that the testimony [must] be accepted as

true." 921 F.2d at 1223 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

The ALJ determined that Mr. Hunt provided sufficient medical evidence of several underlying medical conditions capable of producing pain, including degenerative disc disease, history of gout, COPD, and painful bilateral shoulders. (Tr. 14). Thus, Mr. Hunt satisfied the first prong of the Eleventh Circuit framework for evaluating pain. (Tr. 18).

Based upon these underlying conditions, Mr. Hunt claimed to suffer from extensive disabling pain and other subjective symptoms. As the ALJ summarized Mr. Hunt's pain testimony from the hearing:

> He reported that his medications help a little bit but the pain makes him break out in tears. He described that they cause him to be sleepy and have blurry vision. . . . Mr. Hunt described his pain as going from lower back to his shoulder and down to his buttocks. He stated his legs go numb especially on the right. He reported that his right foot gives him problems. Claimant indicated that his foot swells and he feels like he has needles in this toes. . . . He testified that his foot flares up every other day and he is unable to walk. For his back pain, Mr. Hunt reported that he gets up and down, lies down most of the time, and he will get back up and he can hardly get out of bed. He stated he can sit 10 to 15 minutes, stand 5 to 10 minutes and walk 1/4 of a football field (25 yards). He described that he can lift a gallon of milk but he cannot hold for any period of time. Claimant testified that he cannot lift his 2-year old son. He described that his older son cleans up, feeds the dog and does the yard work; and his girlfriend cooks. He stated that his girlfriend takes care of him during the day and his son is there in the evening…. He reported that his pain affects his bending. He stated he dresses

> himself but with difficulty putting on his pants, socks and bending. He reported that it is difficult for him to get to the toilet . . . . He described his pain at the 10-level with medications. Mr. Hunt reported that he took less medication before the hearing so he could focus. He testified that his pain is worse in the morning. He indicated that he does not sleep well, only 4 hours a night due to his pain. Claimant described that he lies down 6 hours out of an 8-hour day due to his pain. . . . He described that he gets out of breath [due to asthma] and seasons trigger his symptoms…. He stated that his pain and side effects from medication gets him off track and he cannot stay on tasks.

(Tr. 16).

The ALJ addressed Mr. Hunt's numerous subjective complaints under the second prong of the framework:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably have been expected to cause the alleged symptoms; <u>however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible</u> for the reasons explained in this decision.

(Tr. 18 (emphasis added)); (*see also id.* ("In terms of the claimant's alleged gout and back pain, the evidence does not support disabling pain or other limitations that would prevent him from all work activity.")); (*cf.* Tr. 19 ("Overall, the claimant's objective medical evidence supports mild to moderate symptoms.")).

Moreover, the ALJ provided adequate rationale for discounting Mr. Hunt's credibility concerning the severity of his pain and other limitations by pointing to a variety of contradictory evidence. For example, concerning Mr. Hunt's gout and back

pain, the ALJ emphasized that Mr. Hunt went ten months–from November 2012 to September 2013–during his claimed disability period without any treatment. (Tr. 18). Mr. Hunt's lack of medical treatment within his claimed disability period reasonably suggests that his pain and other limitations were managed sufficiently during this extended period of time. Also, the ALJ noted that Mr. Hunt "testified that his treating physician referred him to a neurologist and orthopedist, but he has not complied." (Tr. 16). The ALJ appropriately reasoned that the failure to follow up with either one of these referrals undermined Mr. Hunt's claimed intensity regarding his pain and other disabling symptoms.

Additionally, the ALJ relied upon emergency records that contradicted Mr. Hunt's subjective complaints. (Tr. 17); (*see also* Tr. 273 (recording during emergency room visit on May 19, 2013, of "Pain: 10 lower back" but also reporting that "Patient states symptoms are of mild severity") (emphasis added)); (*cf. also* Tr. 215 ("Quality of Life" form dated September 10, 2012, indicating "back pain" from "hurt[ing] back" at work, "did not check it out, now flares up periodically") (emphasis added)). Furthermore, the ALJ underscored that when Dr. Sathyan Iyer ("Dr. Iyer") examined Mr. Hunt on March 1, 2014, Mr. Hunt "made no allegations of limited activities or restrictions as to personal care . . . ." (Tr. 17); (*see also* Tr. 203 (reporting in "PERSONAL HISTORY" section that "[h]e is single and lives with his son")). These

inconsistencies constitute substantial evidence in support of the ALJ's decision, and no reversible error occurred in the ALJ's application of the pain standard. *Cf. Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence. . . . Substantial evidence is more than a scintilla, but less than a preponderance.").

### B. The ALJ appropriately addressed the medical opinion evidence.

Mr. Hunt argues that the ALJ's opinion conflicts with 20 C.F.R. § 416.927(c)(2), which provides that treating sources "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 416.927(c)(2). However, this section also provides that the ALJ is not required to give controlling weight to the findings of the treating source. *See id.* When a treating source has not treated the patient for a long time, such as in this case in which Mr. Hunt saw Dr. Teschner only three times over a period of two months, the ALJ is not required to give the opinions of the treating physician substantial weight. (*See* Tr. 19 (indicating that Dr. Teschner's records reflected "only three office visits in 2014")); *see also* 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a

treating source, the more weight we will give to the source's medical opinion."). The Regulations additionally provide that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3).

Consistent with the Regulations, within the Eleventh Circuit the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause for affording only minimal weight to a treating physician's opinion exists when:

> (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; (3) or the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

*Phillips*, 357 F.3d at 1241 (citing *Lewis*, 125 F.3d at 1440). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately

states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam).

In this instance, the ALJ reviewed Dr. Teschner's records and highlighted her observation that Mr. Hunt had no neurological deficits, nor did he have any restriction to his range of motion. (Tr. 19, 252, 259, 263). Mr. Hunt's muscle strength was 5/5 in all of his muscle groups. (Tr. 19, 252, 259, 263). All tests for nerve root disease were negative. (Tr. 19, 264). At a subsequent visit, Mr. Hunt "denied numbness and tingling." (Tr. 19). Also, even though Mr. Hunt reported that "he had muscle weakness and back pain . . . his physical examination at the lumbar and thoracic spine was completely normal. . . . [as were] his gait and balance." *Id.*

The ALJ ultimately gave only partial weight to Dr. Teschner's functional assessment of Mr. Hunt (Tr. 21) finding it "to be inconsistent with the overall objective medical evidence and the physical examinations." (Tr. 20). The ALJ's conclusion that Dr. Teschner's functional opinion (Tr. 335–341) was inconsistent with other portions of her records was an explicit and adequate reason for discounting that vocational evidence. Additionally, as Mr. Hunt saw Dr. Teschner only three times in a period spanning less than two months (Tr. 247-68), this short treatment window provides further good cause for not giving substantial weight to Dr. Teschner's

vocational opinion.

The ALJ also discussed Dr. Iyer's consultative examination of Mr. Hunt on March 1, 2014. Dr. Iyer noted that Mr. Hunt's gait was normal and he did not have a need for an assistive device when he walked. Additionally, Dr. Iyer was of the opinion that Mr. Hunt had no limitations with sitting, standing, walking, handling, hearing, or speaking. (Tr. 19, 202-13). Dr. Iyer's opinion was given great weight by the ALJ (Tr. 20), and Dr. Iyer's vocational assessment substantially supports the ALJ decision. Therefore, no reversible error occurred in the ALJ's treatment of the medical opinion evidence.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the parties' submissions, substantial evidence supports the Commissioner's disability decision and proper legal standards were applied. Accordingly, the court will affirm by separate order.

**DONE** and **ORDERED** this the 18th day of November, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge